IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BLYTHE AND SEAN MCDONNELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00146-DGK |
| | ) | |
| NATIONSTAR MORTGAGE LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT FIELD ASSET SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT I OF PLAINTIFF'S PETITION

COMES NOW Defendant Field Asset Services, LLC, and for its Reply in Support of its Motion to Dismiss Count I of Plaintiff's Petition, and states:

### I. INTRODUCTION

The Plaintiffs do not allege that they have performed all of their covenants with respect to the mortgage loan on the property that is the subject of this lawsuit. They do not allege that the property is not vacant while they reside in a second home after failing to make payments—the major covenant undertaken by them in connection with the purchase of the property—on the mortgage loan.

Plaintiffs do not plead a plausible factual basis to support a claim that acts of Defendant FAS were "in connection with" a "purchase" of "mortgage loan transactions." The gravamen of Plaintiff's claims is that a property preservation subcontractor turned off the electricity to the home while there was a sump pump in the home, and that caused flooding in the basement of the home. Plaintiffs became aware of the flooding the morning after it occurred, and refused to attempt to dry the flooded area of the home. Instead, Plaintiffs let the initial water turn into what they now allege is "extensive water and mold damage which now requires mold remediation and interior repairs, including but not limited to the replacement of carpet, drywall, and potentially

stud framing." Plaintiffs threatened, and then filed, this lawsuit and have done nothing to prevent the damages that are presumably still accumulating.

Plaintiffs have not alleged that Defendant FAS is a lender or a loan servicer. Plaintiffs have not alleged that they purchased property preservation services from Defendant FAS. Plaintiff Sean McDonnell did not purchase the mortgage loan for the property in question at all, and thus, has no claim in connection with a purchase that he did not make. Moreover, the Deed of Trust specifically reserves the right for the property to be inspected and secured upon default of the covenants of the loan, including non-payment. But it does not *obligate* the holder of the Deed of Trust to do so. Thus, while Blythe McDonnell consented to the services of which she now complains, she did not purchase them as part of her mortgage loan transaction.

Plaintiffs cannot state a claim against Defendant FAS pursuant to the Missouri Merchandising Practices Act, §§ 407.020 *et seq.*, ("MMPA") and thus the Court should dismiss Count I of Plaintiffs Petition for Damages against Defendant FAS.

## II. SEAN MCDONNELL DOES NOT HAVE A CLAIM AGAINST DEFENDANT FAS UNDER THE MMPA

Pursuant to § 407.025.1, RSMo., a person is entitled to bring a civil action under the MMPA only if they are a "person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020...." Section 407.025.1, RSMo (2016). "By the language of § 407.025, the legislature provided a cause of action for one who purchases, not one who attempts or offers to purchase." *Lauria v. Wright*, 805 S.W.2d 344, 346 (Mo. App. 1991) (citing *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675 (Mo. App. 1984)). Moreover,

2

"Real estate transactions are not covered by § 407.025." *Id.* Thus, the statute does not authorize Sean McDonnell to file a claim under the MMPA where he has not made a "purchase" of any "merchandise" that would entitle him to do so under the Act's specific requirements.

Plaintiff Sean McDonnell did not purchase the Property that is the subject of this lawsuit. Plaintiff Sean McDonnell did not purchase a mortgage loan in connection with the purchase of the Property that is the subject of this lawsuit. Plaintiff Sean McDonnell is neither the title nor record owner of the Property that is the subject of this lawsuit. Therefore, Plaintiff Sean McDonnell simply cannot assert a plausible claim under the MMPA. Plaintiffs do not, anywhere in their Suggestions in Opposition to Defendant FAS' Motion to Dismiss, address that glaringly obvious factual deficiency presented by their Petition (ECF # 38-1) and their proposed First Amended Complaint (ECF # 44-1).

Therefore, because he did not make a "purchase" in connection with the claim he is making for damages, the MMPA, § 407.025, does not authorize Plaintiff Sean McDonnell to sue under the Act, and the Court should dismiss Plaintiff Sean McDonnell's claims against Defendant FAS under Count I of the Petition and the First Amended Complaint for failure to state a claim upon which relief may be granted.

### III. THERE IS NO PLAUSIBLE FACTUAL BASIS FOR PLAINTIFFS TO ASSERT DEFENDANT FAS IS A 'LOAN SERVICER'

Plaintiffs bald and unsupported labeling of Defendant FAS, along with every other defendant as a "loan servicer" does not change the nature of Plaintiff's actual claims or the factual truth behind them. Nor does Plaintiffs' attempt to create, out of half cloth, a Deed of Trust that leaves off the key portions of the provisions that they assert somehow change the property preservation services into something that was purchased, or was an obligation or duty of

any party, as part of the mortgage loan transaction. Blythe McDonnell, by signing the Deed of Trust, permitted property services to be performed, but she certainly did not purchase them as part of the loan transaction. The lender, or the holder of the Deed of Trust, was explicitly under no obligation to perform them at any time during the pendency of the mortgage loan. However, in the event of a default of the covenants of the loan, including nonpayment—as in this case—the holder of the Deed of Trust reserved the right to ensure that the property was secure by performing lock changes, winterization, grass cutting, and other work upon the property. That was not something that Blythe McDonnell purchased and it was not something that the lender or the holder of the Deed of Trust had any obligation to perform.

The full provision of the Deed of Trust provides:

> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in the security instrument,** (b) there is a legal proceeding that might significantly affect Lendor's interests in the property and/or rights under the Security Instrument (such as appreciating and bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or *(c) Borrower has abandoned the property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property and rights under the Security Instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.* **Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.** *Securing the property includes, but is not limited to, entering the property to make repairs, change locks, or place or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.* **Although Lender may take action under this Section 9, Lender does not have to do so and is not under duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.**

> *Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.* These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.
> If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

(Exhibit 2) (emphasis added). The italicized portions made it into the proposed First Amended Complaint. The bolded portions were conveniently left out by Plaintiffs in the Petition and the proposed First Amended Complaint. (Exhibit 2).

The most important provision for purposes of whether or not such "services" were "in connection" with Plaintiff Blythe McDonnell's "purchase" of a mortgage loan is the term which states: "**Although Lender may take action under this Section 9, Lender does not have to do so and is not under duty or obligation to do so.**" (Exhibit 2 at ¶ 9). Thus, the "services" that Plaintiffs assert damaged them were not included in the "agreed upon bundle of services being 'sold' by the lender to the borrower" as the Missouri Supreme Court stated in *Conway v. Citimortgage, Inc.*, 438 S.W.3d 410, 412 (Mo. banc 2014). As the Missouri Supreme Court in *Conway* pointed out, "A loan is composed of both the initial extension of credit and the bundle of related services." *Id.* at 415. "It creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." *Id.* By contrast, the deed of trust explicitly makes clear that the work contracted out to Defendant FAS in this case was *not* a duty included with the loan.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

5

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Defendant FAS is a contractor who provides property preservation, maintenance and repair services, as well as property inspections, pursuant to a contractual relationship with its clients. Plaintiffs have now attempted to cure the deficiency of their original Petition by adding the generic allegation that "Defendants Nationstar, Solutionstar, FAS, Spectrum, and Sound Mind each performed various aspects of loan servicing in connection with that mortgage loan." (ECF # 44-1 at ¶ 37). As a preliminary matter, even under the notice pleading permitted by Federal Rules of Civil Procedure, where, as here, the Plaintiffs simply group all defendants together and generally allege conclusory liability without individually describing a plausible scenario by which Plaintiffs are entitled to relief against *each individual defendant*, the First Amended Complaint remains overly vague and does not properly provide the "'grounds' of [Plaintiffs'] 'entitlement to relief'" *Twombly*, 550 U.S. at 555. In the proposed First Amended Complaint, Count I, (ECF # 44-1), Plaintiffs do no more than group all defendants together and conclude that they performed "various aspects of loan servicing in connection with that mortgage loan." (ECF # 44-1 at ¶ 37). That is an overly broad, vague, and generic allegation that in no

6

Case 4:17-cv-00146-DGK   Document 48   Filed 11/02/17   Page 6 of 11

way gives Defendant FAS notice as to what specific factual basis Plaintiffs base their MMPA claims against Defendant FAS upon.

Moreover, pursuant to 12 U.S.C.S. § 2605(i)(2) and (3), the term "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)" and the term "servicing" "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C.S § 2605(i)(2) –(3). Plaintiff does not allege, and cannot allege, that Defendant FAS, among others, received any payments or agreed to become a loan servicer for a loan in connection with the property that is the subject of this lawsuit.

Instead, Plaintiffs have alleged that they were damaged by the performance of work contracted for the securing of the property, including entering the property to make repairs, change locks, drain water from pipes, eliminating dangerous conditions, and having utilities turned on or off. That work does not include the making or taking of payments and application to a loan pursuant to contract. Plaintiffs do not allege that Defendant FAS received payment from them, or made payments relating to a loan, and does not assert that Defendant FAS is a lender or a loan servicer. (ECF 44-1, *generally*).

Defendant FAS and the independent contractors it works with do not have any more to do with the "servicing" of a loan than a utility company who provides electricity or water to the property that is subject to a mortgage loan. They are simply services performed with respect to

7

the property itself, at the behest of a client who has contractually reserved the right to have those services performed on the property subject to specific terms.

Plaintiffs cannot make a plausible claim that Defendant FAS was a "loan servicer," or that Defendant FAS (or any Defendant for that matter) had an obligation under the loan terms to provide inspection or property preservation, maintenance, or repair services to the property. Instead, in the event of default by Plaintiffs of the covenants of the loan, the deed of trust permits the lender, but specifically does not obligate it, to secure the premises by performing inspections, property preservation, maintenance and repair. Therefore, Plaintiffs' claims under Count I of the Petition and the proposed First Amended Complaint must fail and the Court should dismiss Count I, alleging claims of a breach of the MMPA, against Defendant FAS.

### IV. ALL OF PLAINTIFF'S CITED CASE LAW INVOLVES BANKS, LENDERS, OR MORTGAGE LOAN SERVICERS AND IS NOT APPLICABLE TO THIS CASE

None of Plaintiffs' cited case law is applicable to their alleged claims against Defendant FAS under the MMPA. Defendant FAS could not find a case in which a third party providing property maintenance, repair, or preservation was held to be a mortgage loan "servicer." Defendant FAS is not, in fact, claiming that it is exempted from the MMPA because it was not a direct party to a mortgage loan contract, rather Defendant FAS is asserting that the services it provided were not purchased by Plaintiffs and were not included in the obligations of the lender within the terms of any mortgage loan contract. Yet Plaintiff addresses this shadow argument for nearly a page. (ECF 45 at p. 9).

Next, Plaintiff attempts to equate Defendant FAS with Wells Fargo, who *sold the plaintiffs in Wivell* a loan, and is in no way analogous to the inspections, property preservation, maintenance, and repair work performed by Defendant FAS and its subcontractors. *Wivell v.*

8

*Wells Fargo Bank, N.A.*, 773 F.3d 887, 887 (8th Cir. 2014) ("The Wivells purchased a residential property in February 2006 using funds borrowed from Wells Fargo."). By contrast, another portion of the *Wivell* decision held: "Unlike the defendants in *Conway* and *Watson*, [the trustee] did not assume a continuing duty to service the [plaintiffs'] loan." *Id.* at 895. "Instead, the deed of trust established a narrow, contingent role for [trustee] in the event that the [plaintiffs] defaulted." *Id.* "Because [trustee] did not 'continue to perform' these duties 'for the life of the loan,' *see id.*, the rule established by *Conway* and *Watson* does not apply to a trustee[.]" *Id.* Proceeding to the last of Plaintiff's cited case law involves a completely inapposite fact scenario that strictly involves a defendant, CitiMortgage, Inc., that is a lender or "loan servicer." *White v. CitiMortgage, Inc.*, 859 F.3d 630 (8th Cir. 2017) (a loan servicer failed to correctly apply payments and restore borrower's title).

The same reasoning that the Eighth Circuit applied in *Wivell* in determining that the Trustee, who performs limited duties upon the event of default and are not in connection with the services purchased as part of the mortgage loan, applies to the present case. Defendant FAS is not a lender, nor do Plaintiffs allege that it is. Defendant FAS does not service any loan, nor do Plaintiffs allege that it does. Defendant FAS did not assume a continuing duty to service either Plaintiff's loan, nor do Plaintiffs allege that it did.

Defendant FAS is not a bank. Defendant FAS is not a lender. Defendant FAS does not collect money from the Plaintiffs, nor pay money on behalf of the Plaintiffs to anyone pursuant to loan terms. Nor do Plaintiffs allege any of the above. The services performed, which generically have been labeled as "mortgage loan servicing" by Plaintiffs are clearly excluded by the portions of the Deed of Trust Plaintiffs did not deem fit to cite in their Petition or their First

9

Amended Complaint. Plaintiffs' facile argument is that Defendant FAS contracts with a company who services loans, and thus, any service Defendant FAS performs is by default "in connection" with the "servicing" of a mortgage loan. Never mind that the actual acts alleged have nothing to do with a mortgage loan or with servicing a mortgage loan. Plaintiff's MMPA claim is simply not plausible under even Plaintiff's generic and conclusory allegations.

## V. CONCLUSION

Plaintiffs have alleged no facts that would demonstrate that any of the services FAS performed were "in connection to" a transaction involving either Plaintiff, Sean McDonnell or Blythe McDonnell, and therefore has failed to state a claim upon which relief may be granted under the MMPA against Defendant FAS.

WHEREFORE Defendant Field Asset Services, LLC a/k/a Assurant Field Services, LLC respectfully requests this Court dismiss Counts I of Plaintiff's Petition for Damages against this Defendant for failure to state a claim upon which relief may be granted, and for such other and further relief as the Court deems just and proper.

MORROW•WILLNAUER•CHURCH, L.L.C.

By _____
JAMES C. MORROW, #32658
MARSHALL W. WOODY # 64251 (KS-000987)
8330 Ward Parkway, Suite 300
Kansas City, Missouri 64114
Telephone: (816) 382-1382
Fax: (816) 382-1383
Email: jmorrow@mwcattorneys.com
mwoody@mwcattorneys.com
ATTORNEY FOR DEFENDANT
FIELD ASSET SERVICES, LLC AKA
ASSURANT FIELD SERVICES, LLC

I hereby certify that the above and foregoing was filed with the Clerk of the Court via ECF on this 2nd day of November 2017, with a copy of the same being served via electronic mail (ECF) by the Clerk of the Court on this 2nd day of November 2017, to:

Jason K. Rew
OSWALD ROAM & REW LLC
601 NW Jefferson Street
Post Office Box 550
Blue Springs, Missouri 64013-0550

Thomas V. Bender
Dirk L. Hubbard
WALTERS BENDER STROHBEHN
& VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, Missouri 64196

ATTORNEY FOR PLAINTIFFS

Benjamin F. Mann
Christopher C. Miles
HUSCH BLACKWELL, LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112

ATTORNEYS FOR DEFENDANT
NATIONSTAR MORTGAGE, LLC

_____
MARSHALL W. WOODY

11