IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BLYTHE AND SEAN MCDONNELL, | ) | |
| | ) | |
| Plaintiffs/Counter-claim Defendants, | ) | |
| | ) | |
| v. | ) | Case No. 4:17-cv-00146-DGK |
| | ) | |
| NATIONSTAR MORTGAGE LLC, and | ) | |
| | ) | |
| Defendant/Counter-claim Plaintiff, | ) | |
| | ) | |
| FIELD ASSET SERVICES, LLC d/b/a | ) | |
| Assurant Field Services, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO DISMISS

This lawsuit arises from allegations that Defendant Nationstar Mortage LLC ("Nationstar") and Defendant Field Asset Services, LLC ("FAS") unlawfully entered Plaintiff Blythe McDonnell's home and damaged it because Nationstar incorrectly believed she had defaulted on her mortgage and abandoned the property. Now before the Court is FAS's Motion to Dismiss Count I of Plaintiff's Petition (Doc. 38) and Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 44).

Because Count I in both the initial Petition and the proposed First Amended Complaint fails to plead a viable Missouri Merchandising Practices Act ("MMPA") claim against FAS, the motion to dismiss is GRANTED and the motion for leave to file an amended complaint is GRANTED IN PART AND DENIED IN PART.

**Standard of Review**

A complaint may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, a complaint must include "enough facts

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than pleading "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the court construes it liberally and draws all reasonable inferences from the facts in the plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012).

**Factual Background**

Count I of Plaintiffs' initial Petition is brought under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020-.025. Counts II through VI allege common law trespass, malicious trespass, conversion, breach of contract, and negligence, respectively.

At some point, the Petition is unclear as to when, Plaintiff Blythe McDonnell[1] granted a deed of trust secured by real property ("the Property"), a house, located in Kansas City, Missouri. On February 7, 2013, the deed of trust was assigned to Nationstar, apparently so it

---

[1] It appears Ms. McDonnell took out the mortgage. The Petition alleges Mr. McDonnell also has an interest in the Property that Defendants harmed.

could service the loan.[2] And at some point, it is unclear when, Nationstar hired FAS to investigate whether the Property had been abandoned, and if so, to secure it.

On September 20, 2106, FAS left a notice posted on the door of the house stating that it had inspected the property and found it vacant. The notice advised Plaintiffs to call a specific telephone number in the event it was not vacant. On September 22, 2016, Plaintiff Sean McDonnell called the phone number and advised FAS that the house was not vacant, and that he did not permit anyone to enter the house.

Despite Mr. McDonnell's phone call, FAS entered the house and removed personal property, changed the locks on the house, and winterized it. As part of winterizing the house, FAS employees allegedly turned off power at the breaker box, rendering the house's sump pump inoperable. A rainstorm subsequently caused water to enter the partially finished basement which, because the sump pump had been rendered inoperable by FAS's actions, led to standing water in the basement and significant property damage.

Nationstar retained FAS pursuant to Section 9 of the Deed of Trust,[3] which concerns how the lender protects its interest in the Property. In relevant part, Section 9 states:

> If . . . (c) Borrower has abandoned the Property, then Lender *may* do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including . . . securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up

---

[2] Although the Petition names two different defendants, it apparently meant "Defendant" to refer to Defendant Nationstar. The Petition also suggests several anomalies in the properties' recorded history. For example, the Petition alleges that Plaintiffs granted First Magnus Financial Corporation a deed of trust secured by the property and recorded it on August 30, 2015, two years *after* the deed of trust was allegedly assigned to "Defendant." Pet. at ¶ 7 (Doc. 3-2). The Court does not know if these are errors or accurately reflect a tangled recorded history to the property. Further, the Proposed First Amended Complaint alleges Plaintiffs "made payments on the note beginning in 2005," so a mortgage was apparently taken out on the property sometime in 2005. Proposed First Am. Compl. ¶ 13 (Doc. 44-1).

[3] The Petition alleges this provision was in "Section 8" of the deed of trust. Pet. at ¶ 8. This appears to be a typographical error. *Compare* Deed of Trust ¶ 8, *with* Deed of Trust ¶ 9 (Doc. 5-1).

> doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender *may* take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.

Deed of Trust (Doc. 5-1, Ex. 2) (emphasis added).

After FAS filed the pending motion to dismiss Count I, Plaintiffs moved to file the proposed First Amended Complaint (Doc. 44-1). The First Amended Complaint adds detail and clarification to the allegations concerning the inspection and entry into Plaintiffs' home. It also adds three defendants to the litigation. Count I of the First Amended Complaint is brought under the MMPA and names FAS as a defendant.

## Discussion

**I.     Plaintiffs have not stated an MMPA claim against FAS.**

In relevant part, the MMPA prohibits

> [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

Mo. Rev. Stat. 407.020.1. Plaintiffs contend the Petition states a viable MMPA claim against FAS because FAS was acting on Nationstar's behalf, and Nationstar was performing loan services.

The Missouri Supreme Court has held that the MMPA applies to downstream purchasers of a loan note as well as companies that service mortgage loans. *See Conway v. Citimortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014). In another decision handed down the same day as *Conway*, however, it held a service is not in connection with the sale of a loan if "that was not a

service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan." *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 408 (Mo. 2014).

The Eighth Circuit analyzed these decisions in the context of determining whether a trustee under a deed of trust can be sued under the MMPA for carrying out its duties as a trustee. In deciding whether such services are made "in connection with the sale" of a loan, it held:

> the *Conway* court made clear that its rationale turned on the continuing nature of the lender-borrower relationship. As the court explained, "[b]ecause [the lender and the borrower] must continue to perform ... duties for the life of the loan, the sale continues throughout the time the parties perform their duties." Consequently, an action taken while performing these continuing duties is "in connection with" the sale of a loan. Unlike the defendants in *Conway* and *Watson*, [the trustee] did not assume a continuing duty to service the Wivells' loan. Instead, the deed of trust established a narrow, contingent role for [the trustee] in the event that the Wivells defaulted. Because [the trustee] did not "continue to perform" these duties "for the life of the loan," the rule established by *Conway* and *Watson* does not apply to a trustee.

*Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 895 (8th Cir. 2014) (quoting *Conway*, 438 S.W.3d at 415).

The question here is whether FAS's alleged role is more analogous to a loan servicer or to a trustee exercising power pursuant to some provision in a deed of trust. Unlike a loan servicer, FAS did not play a continuous role in this loan transaction. Like the trustee in *Wivell*, it played a brief, limited role which was triggered by a contingent event, namely a purported default on the loan. Although Plaintiffs attempt to characterize FAS as a loan servicer by arguing, "FAS acted on behalf of Nationstar in performing services pursuant to the mortgage loan," Suggestions in Supp. at 9, FAS is not a loan servicer. It provides property preservation services, and property preservation services are not a service that was sold to, or purchased by, Ms. McDonnell in connection with her mortgage. FAS is simply a third-party that Nationstar

5

hired to perform certain work purportedly authorized by Section 9 of the deed of trust. To hold otherwise stretches the meaning of "loan services" beyond the existing caselaw and common sense.

Consequently, the Court holds Plaintiffs cannot maintain an MMPA claim against FAS in this case.

## Conclusion

For the reasons discussed above, FAS's motion to dismiss is GRANTED. Although dismissal of a complaint is normally made with leave to amend, *see Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438-39 (8th Cir. 1983), because there is no way FAS can be liable under the MMPA here, any amendment would be futile. Count I is DISMISSED WITH PREJUDICE against FAS.

Plaintiffs' motion for leave to file an amended complaint is GRANTED IN PART AND DENIED IN PART. Plaintiffs may file their amended complaint after excising any allegation asserting FAS is liable under the MMPA.

**IT IS SO ORDERED.**

Date:   December 28, 2017                    /s/ Greg Kays
                                             GREG KAYS, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT