IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BLYTHE MCDONNELL & <br> SEAN MCDONNELL, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONSTAR MORTGAGE, LLC, <br> FIELD ASSET SERVICES, LLC a/k/a <br> ASSURANT FIELD ASSET SERVICES, <br> SOLUTIONSTAR FIELD SERVICES, LLC, <br> SPECTRUM FIELD SERVICES, INC., AND <br> SOUND MIND REAL ESTATE, LLC, <br><br> Defendants. | Case No: 4:17-cv-000146-DGK |

**DEFENDANT SOUND MIND REAL ESTATE, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS COUNT I OF**
**PLAINTIFFS' FIRST AMENDED COMPLAINT**

COMES NOW Defendant, Sound Mind Real Estate, LLC ("Sound Mind"), by and through its attorneys, Fox Galvin, LLC, and in support of its motion to dismiss, states:

**I. INTRODUCTION**

This action was originally filed in state court, in the Circuit Court of Jackson County, Missouri, on January 23, 2017. On February 28, 2017, the case was removed to this Court. (ECF No. 3). On December 28, 2017, this Court entered an Order dismissing with prejudice Count I of Plaintiffs' Complaint against Field Asset Services LLC d/b/a Assurant Field Services, LLC. On January 16, 2018, plaintiffs filed a First Amended Complaint (ECF No. 54).

Sound Mind's Motion to Dismiss plaintiffs' Count I is similar to the Motion to Dismiss filed by FAS on September 9, 2017, which this Court granted on December 28, 2017. Sound Mind seeks dismissal of plaintiffs' claim against it for violations of the Missouri Merchandising Practices Act, §§ 407.020 *et seq.* ("MMPA") on two bases. First, Sean McDonnell was never a

"purchaser" and, therefore, lacks standing to bring an action under the MMPA.  Second, there is no plausible factual basis to support plaintiffs' MMPA claim against Sound Mind because Sound Mind is in no way a "loan servicer" as required by the Act.  In other words, plaintiffs do not plead a plausible factual basis to support a claim that acts of Sound Mind were "in connection with" a "purchase" of "mortgage loan transactions" or that Sound Mind was in any way a "loan servicer".

Therefore, plaintiffs cannot state a claim against Sound Mind pursuant to the MMPA and, thus, the Court should dismiss Count I of plaintiffs' First Amended Complaint against Sound Mind.

## I. QUESTION PRESENTED

Do Plaintiffs state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), against Defendant Sound Mind, for violations of the MMPA?

## II. SHORT ANSWER

No. Plaintiffs cannot state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6) against Sound Mind for violations of the MMPA because Sean McDonnell was not a "purchaser" (and therefore, lacks standing to bring a claim against Sound Mind), and Sound Mind is not a "loan servicer" under the MMPA.

## III. STANDARD OF REVIEW

"In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 2d 754, 757 (W.D. Mo. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).  "A complaint is plausible if its 'factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).  "The complaint

2

must contain more than mere labels and conclusions or a formulaic recitation of the elements of the claim." *Id.* (citing *Bell Atl. Corp. v. Twomby*, 550 U.S. 544, 594, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "For purposes of a Rule 12(b)(6) motion, the court must accept the allegations of the complaint as true; however, the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (citing *Iqbal*, 556 U.S. at 678).

## IV. ARGUMENT

**Sean McDonnell does not have a claim against Sound Mind under the MMPA**

Sean McDonnell cannot assert a plausible claim under the MMPA because he was never a "purchaser," nor was he a title holder to the property at issue.

Pursuant to § 407.025.1, RSMo., a person is entitled to bring a civil action under the MMPA only if they is a "person who purchases or leases merchandise primary for personal, family, or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use of employment by another person of a method, act, or practice declared unlawful by section 407.020 … ." Section 407.025.1, RSMo (2016). "By the language of § 407.025, the legislature provided a cause of action for one who purchases, not one who attempts or offers to purchase." *Lauria v. Wright*, 805 S.W.2d 344, 346 (Mo. App. 1991) (citing *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675 (Mo. App. 1984)). Additionally, "Real estate transactions are not covered by § 407.025." *Id.* The MMPA does not authorize Sean McDonnell to file a claim under the MMPA where he has not made a "purchase" of any "merchandise" that would entitle him to do so.

Sean McDonnell did not purchase a mortgage loan in connection with the property in question. Sean McDonnell is neither the title nor record holder of the Property at issue in this lawsuit. Therefore, because Sean McDonnell did not make a "purchase" in connection with the claim he is making for damages, the MMPA does not authorize him to sue under the Act, and

3

this Court should dismiss Sean McDonnell's claims against Sound Mind under Count I of plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted.

**There is no plausible factual basis for plaintiffs to assert that Sound Mind is a "loan servicer."**

Sean McDonnell and Blythe McDonnell have both failed to state a claim in their First Amended Complaint against Sound Mind under the Missouri Merchandising Practices Act. Plaintiffs assert, without factual basis, that Sound Mind "performed various aspects of loan servicing in connection with that mortgage loan." (ECF No. 54 at ¶ 37). This allegation has absolutely no plausible basis whatsoever. Plaintiffs' entire allegation under the MMPA with respect to Sound Mind assumes Sound Mind is a "mortgage loan servicer," which is unfounded and untrue and has been pled in a disingenuous attempt to avoid the impact of the Court's December 28, 2017. (ECF. No. 51)

Sound Mind is not a "loan servicer." Sound Mind does not have any duties with respect to Blythe McDonnell's loan in any way. Sound Mind only performs property preservation services. As to the property at issue, Sound Mind was contacted only to perform property preservation services at the property. (*See generally* Work Order between Sound Mind and Field Asset Services, Exhibit A). Such property preservation services were not a service sold to Blythe McDonnell in connection with her mortgage loan, nor were they services that were purchased by Blythe McDonnell in connection with her mortgage loan. Sound Mind did not assume any duty, much less a continuing duty, to service Blythe McDonnell's mortgage loan.

Plaintiffs allege that the "unlawful actions of Defendants… occurred in connection with the sale or advertisement of merchandise in trade or commerce, specifically the mortgage loan

4

transaction on the Premises." (ECF No. 54 at ¶ 38). However, Sound Mind had nothing to do with the mortgage loan transaction involving the Property at issue.

Furthermore, Sound Mind is not a bank. Sound Mind is not a lender. Sound Mind does not collect money from the plaintiffs nor pay money on behalf of the plaintiffs to anyone pursuant to loan terms. Nor do plaintiffs allege any of the above. The services performed, which generically have been labeled as "mortgage loan servicing" by plaintiffs are clearly excluded by the portions of the Deed of Trust. Plaintiffs' argument is that Sound Mind contracts with a company who services loans, and thus, any service Sound Mind performs is by default "in connection" with the "servicing" of a mortgage loan. Plaintiffs' MMPA claim is simply not plausible under even plaintiffs' generic and conclusory allegations.

Although Blythe McDonnell, by signing the Deed of Trust, permitted property services to be performed, she did not purchase them as part of the loan transaction. The lender, or the holder of the Deed of Trust, was explicitly under no obligation to perform them at any time during the pendency of the mortgage loan. However, in the event of a default of the covenants of the loan, including nonpayment – as in this case – the holder of the Deed of Trust reserved the right to ensure that the property was secure by performing lock changes, winterization, grass cutting, and other work upon the property. That was not something that Blythe McDonnell purchased and it was not something that the lender or the holder of the Deed of Trust had any obligations to perform.

The full provision of the Deed of Trust provides:

> 9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in the security instrument,** (b) there is a legal proceeding that might significantly affect Lender's interests in the property and/or rights under the Security Instrument (such as appreciating and bankruptcy, probate, for condemnation or forfeiture, for

5

> enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or *(c) Borrower has abandoned the property, then Lender many do and pay for whatever is reasonable or appropriate to protect Lender's interest in the property and rights under the Security Instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.* **Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.** *Securing the property includes, but is not limited to, entering the property to make repairs, change locks, or place or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.* **Although Lender may take action under this Section 9, Lender does not have to do so and is not under duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.**
>
> *Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.* These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.
>
> If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

*Id.* (emphasis added). The italicized portions were included in the First Amended Complaint. The bolded portions are conveniently left out by plaintiffs in the First Amended Complaint.

The most important provision for purposes of whether or not such "services" were "in connection" with plaintiff Blythe McDonnell's "purchase" of a mortgage loan is the term which states: "**Although Lender may take action under this Section 9, Lender does not have to do so and is not under duty or obligation to do so.**" *Id.* at ¶ 9. Thus, the "services" that plaintiffs assert damaged them were not included in the "agreed upon bundle of services being 'sold' by the lender to the borrower" as the Missouri Supreme Court stated in *Conway v. Citimortgage,*

6

*Inc.*, 438 S.W.3d 410, 412 (Mo. banc 2014). As the Missouri Supreme Court in *Conway* pointed out, "A loan is composed of both the initial extension of credit and the bundle of related services." *Id.* at 415. "It creates a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." *Id.* By contrast, the Deed of Trust explicitly makes clear that the work contracted out to defendant Sound Mind in this case was *not* a duty included with the loan.

Moreover, pursuant to 12 U.S.C.S. § 26059(i)(2) and (3), the term "servicer" is defined as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)" and the term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 USCS § 2609] and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C.S. § 2605(i)(2)-(3).

Likewise, as this Court noted in its Order granting Nationstar and FAS's Motion to Dismiss, the Missouri Supreme Court has held that a service is not in connection with the sale of a loan if "that was not a service the lender agreed to sell or the borrower agreed to buy when the parties agreed to the loan. *Watson v. Wells Fargo Home Mortg., Inc.*, 438 S.W.3d 404, 408 (Mo. 2014). The Eighth Circuit analyzed these decisions in the context of determining whether a trustee under a deed of trust can be sued under the MMPA for carrying out its duties as a trustee. In deciding whether such services are made "in connection with the sale" of a loan, it held:

> the *Conway* court made clear that its rationale turned on the continuing nature of the lender-borrower relationship. As the court explained, "[b]ecause [the lender and the borrower] must continue to perform ... duties for the life of the loan, the sale continues throughout the time the parties perform their duties." Consequently, an action taken while performing these continuing duties is "in connection with" the sale of a loan. Unlike the defendants in *Conway* and *Watson*, [the trustee] did not assume a continuing duty to service the Wivells' loan. Instead, the deed of trust established a narrow, contingent role for [the trustee] in the event that the Wivells defaulted.

7

> Because [the trustee] did not "continue to perform" these duties "for the life of the loan," the rule established by *Conway* and *Watson* does not apply to a trustee.

*Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 895 (8th Cir. 2014) (quoting *Conway*, 438 S.W.3d at 415).

Similarly noted by this Court in its December 28 Order regarding defendant FAS, "the question here is whether [Sound Mind's] alleged role is more analogous to a loan servicer or to a trustee exercising power pursuant to some provision in a deed of trust." (ECF. No. 51) Like the Court analogized in its Order, unlike a loan servicer, Sound Mind did not play a continuous role in this loan transaction. Sound Mind provides property preservation services, and property preservation services are not a service that was sold to, or purchased by, Blythe McDonnell in connection with her mortgage. Sound Mind is simply a third-party hired to perform certain work allegedly authorized by the deed of trust and thus, in no way is a "loan servicer."

Plaintiffs do not plead a plausible factual basis to support a claim that Sound Mind was a "loan servicer." Therefore, plaintiffs cannot state a claim against Sound Mind pursuant to the Missouri Merchandising Practices Act, §§ 407.020 *et seq.* ("MMPA") and, thus, the Court should dismiss Count I of plaintiffs' First Amended Complaint against Sound Mind.

## V. CONCLUSION

Because the claims of plaintiffs are not plausible, Sound Mind respectfully asks this Court to grant its Motion to Dismiss Count I of plaintiffs' First Amended Complaint.

WHEREFORE Defendant Field Asset Services, LLC a/k/a Assurant Field Services, LLC respectfully requests this Court dismiss Count I of Plaintiffs' First Amended Complaint against Sound Mind for failure to state a claim upon which relief may be granted, and for such other and further relief as the Court deems just and proper.

8

FOX GALVIN, LLC


By:   s/ Richard B. Korn
Richard B. Korn, # 06229621
rkorn@foxgalvin.com
One Memorial Drive, 12th Floor
St. Louis, MO 63102
(314) 588-7000
(314) 588-1965 (Fax)

Attorneys for Defendant
Sound Mind Real Estate, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will serve the following counsel of record:

| | |
|---|---|
| Mr. Jason K. Rew<br>Oswald Roam Rew & Fry, LLC<br>602 NW Jefferson Street<br>PO Box 550<br>Blue Springs, MO 64013<br>816-229-8121<br>816-229-0802 (Fax)<br>jrew@orrf-law.com | Mr. James C. Morrow<br>Mr. Marshall W. Woody<br>Morrow Willnauer Church, L.L.C.<br>8330 Ward Parkway, Suite 300<br>Kansas City, MO 64114<br>816-382-1382<br>816-382-1383 (Fax)<br>jmorrow@mwcattorneys.com |
| Mr. Thomas V. Bender<br>Mr. Dirk L. Hubbard<br>Walters Bender Strohbehn & Vaughan, PC<br>1100 Main Street<br>PO Box 26188<br>Kansas City, MO 64196<br>816-421-6620<br>816-421-4747 (Fax)<br>dhubbard@wbsvlaw.com<br>tbender@wbsvlaw.com | Attorneys for Defendant Field Asset Services, LLC a/k/a Assurance Field Services, LLC<br><br>Mr. Thomas B. Alleman<br>Dykema Cox Smith<br>1717 Main, Suite 4200<br>Dallas, TX 75201<br>214-698-7830<br>214-462-6401 (Fax)<br>talleman@dykema.com |
| Attorneys for Plaintiffs | Attorney for Defendant Nationstar Mortgage, LLC |

/s/ Richard B. Korn